**PROVIDENT ENERGY ASSOCIATES OF MONTANA, a Montana limited liability company; Prism Corporation, an Oklahoma corporation, Plaintiffs—Appellees,**

v.

**Foy Wallace BULLINGTON; O.O. Thompson; Murphy Phillips, individually and as executor of the Estate of Ford Fullingham, Defendants—Appellants.**

No. 02–35798.

D.C. No. CV–01–00055–SEH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2003.

Decided Oct. 7, 2003.

Before THOMPSON, HAWKINS, and BERZON, Circuit Judges.

## MEMORANDUM*

Provident Energy Associates ("Provident") brought this suit for declaratory judgment against Foy Wallace Bullington, O.O. Thompson, and Murphy Phillips, individually and as executor of the Estate of Ford Fullingim ("Bullington Parties"), requesting a declaration that Provident owns the Two Medicine Cut Bank Sand Unit ("TMCBSU") and all the revenue and royalties produced therefrom, and that the Bullington Parties had no rights to or interest in either Provident or any of its assets (including the TMCBSU). The district court granted summary judgment to Provident on the basis of a judicial admission made by the Bullington Parties in their pleadings. Because the parties are familiar with the facts of this case, we do not repeat them here.

█ 1. The Bullington Parties first argue that the district court lacked subject matter jurisdiction because there was no diversity of citizenship among the parties. This argument is without merit. The citizenship of Provident, a Montana limited liability company, is determined by the citizenship of each of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that, for the purpose of diversity jurisdiction, the citizenship of a limited partnership is determined by the citizen-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ship of each of the partners). When Provident was formed, it had two members: Prism, an Oklahoma corporation headquartered in Tulsa, and Lone Star International Energy, Inc. ("LSI"), a Nevada corporation with its principal place of business in Texas. However, under Montana law, LSI ceased being a member of Provident on December 8, 1998, when it was adjudicated as bankrupt. Mont.Code Ann. § 35–8–802(d)(iii) (1997) ("A person ceases to be a member of a limited liability company [when that person] is adjudicated as bankrupt or insolvent."). As there is thus complete diversity among Provident (a citizen of Montana and Oklahoma) and the Bullington Parties (all citizens of Texas), the district court had subject matter jurisdiction over the case.

2. The Bullington Parties filed their first motion for leave to amend their answer on June 5, 2002. The district court had already entered a scheduling order, allowing the parties to amend their pleadings only up until November 16, 2001. Such a scheduling order cannot be modified "except upon a showing of good cause." Fed.R.Civ.P. 16(b). The only reason proffered by the Bullington Parties for granting their motion for leave to amend was that their attorney had misread the First Amended Complaint and had therefore erroneously and unintentionally admitted certain facts and conclusions contained therein. This reason does not constitute good cause. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of [leave to amend].").  Therefore, the district court did not abuse its discretion by denying the Bullington Parties Motion for Leave to Amend.

3. We review the district court's grant of summary judgment *de novo*. *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*, 339 F.3d 1126, 2003 WL 21920370, *5 (9th Cir.2003). "Summary judgment is warranted 'if the pleadings, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. Pro. 56(c)). Once a proper summary judgment motion is made, the nonmoving party must point to evidence indicating that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The district court based its grant of summary judgment entirely on the Bullington Parties' judicial admission in their First Amended Original Answer, wherein the Bullington Parties admitted the following:

[The Bullington Parties] were mere pre-bankruptcy lenders of money to Lone Star in an aggregate amount of $350,000 to Lone Star which Lone Star advanced to Provident as part of a cash-down payment towards Provident's purchase of the [TMCBSU]. Neither Defendants nor any person or entity claiming under them, has any interest in Provident, nor in the [TMCBSU], and the Lone Star bankruptcy estate had no interest in Provident against which a constructive or resulting trust may be imposed. Alternatively, any claim that Defendants or any person or entity claiming under them, may have, for damages or to a constructive trust, is a claim against Lone Star's bankruptcy estate. As lenders to Lone Star, or otherwise, the Defendants have no legal or equitable claim to a resulting or constructive trust against either Plaintiff, or against any asset of either Plaintiff, including any asset included in the [TMCBSU].

A statement of fact made by a party in its pleadings is considered a judicial admission, and is conclusive with respect to that fact unless the pleading is amended or the statement is otherwise withdrawn. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir.1995) ("[A] statement in a complaint may serve as a judicial admission. . . . Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight.").

The Bullington Parties did explain in their Brief in Opposition to Summary Judgment and the supporting Statement of Genuine Issues that this judicial admission was unintentional and erroneous. This explanation is supported by the First Amended Original Answer itself and by an affidavit by counsel submitted with the Statement of Genuine Issues.

The First Amended Original Answer itself contradicts the admission relied upon by the court. That Answer states in paragraph two that "Defendants seek ownership and control of Provident. . . ." In paragraphs three and four of the First Amended Original Answer, the Bullington Parties refer to the financing arrangement as an investment in Provident. Such a statement is plainly contradictory to the admission that the Bullington Parties were mere pre-bankruptcy lenders to LSI. Also, paragraph eleven of the First Amended Original Answer "den[ies] that [Provident and Prism] are entitled to the relief for which they pray."

■ In addition to the First Amended Original Answer itself, counsel for the Bullington Parties also submitted an affidavit[1] with the Motion for Leave to Amend the Answer, explaining the admission. This affidavit stated simply that counsel had misread paragraphs 23 through 27 of the First Amended Complaint, and had intended to admit to the statement that Provident had sought the same relief in an adversary proceeding that was part of LSI's bankruptcy proceedings. Giving all of these explanations and factors "due weight," the admission, while evidence relevant to the determination of summary judgment, is not the *only* factor to be considered.

Other evidence submitted by Appellants to the district court in their Statement of Genuine Issues raises genuine issues of material facts. Attached to the Statement of Genuine Issues is a copy of the Mutual Agreement, signed by the Bullington Parties and the President and Secretary of LSI. As appellants point out, this document does not name the financing arrangement included therein a "loan." Instead, this document references LSI's intent to "assign to each Investor . . . a carried working interest in the Mont–Mill Unit [TMCBSU]." Appellants also included the affidavit of Gary Little, the President of Prism and the Manager of Provident, in which he stated that each of the Bullington Parties owed Prism, the operator of TMCBSU, a share of the working interest expenses. This debt suggests that the Bullington Parties were not mere lenders to LSI, and in fact were investors in the LLC. Thus, the affidavit of Little also raises a genuine issue of material fact.

Because the judicial admission of the Bullington Parties should not have ended the district court's inquiry for summary judgment purposes, and because the Bullington Parties' opposition to Provident's motion for summary judgment pointed to

---

1. The affidavit was also attached as an exhibit to the Bullington Parties' Statement of Genu- ine Issues.

evidence in the record supporting the Bullington Parties' interpretation of the financing arrangement among the various parties to the transaction, there is still a genuine issue of material fact (i.e., whether the Bullington Parties were mere lenders to LSI or were investors in Provident). Therefore, the district court's grant of summary judgment is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.